# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

MICHAEL FERNANDEZ,                  §
    Plaintiff,                        §
                              §
                              §
v.                                  §
                              §
EL PASO COUNTY                      §
SHERRIFF RICHARD                    §
WILES, OFFICER                      §          EP-14-CV-390-PRM
WESNINSKI, OFFICER                  §
LEGARETTA, OFFICER                  §
LOPEZ, OFFICER                      §
MEDRANO, OFFICER                    §
VARGAS, OFFICER A.                  §
KRUK, and OFFICER                   §
MARIA A. SANTANA,                   §
    Defendants.                      §

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Plaintiff Michael Fernandez's "Complaint" (ECF No. 16) and "Amended Complaint" (ECF No. 18), both filed on February 10, 2015, in the above-captioned cause. On the order of the United States Magistrate Judge to which this case had been referred, Plaintiff was permitted to file his Complaint and Amended Complaint *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). Order Granting Mot. to Proceed *In Forma Pauperis*, ECF No. 15. After considering the claims raised and allegations set forth in Plaintiff's

pleadings, the Magistrate Judge issued a "Report and Recommendation" (ECF No. 21) on February 25, 2015, in which she recommended that the case "be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for being frivolous and for failure to state a claim." After reviewing de novo[1] the Magistrate Judge's Report and Recommendation, the Court agrees and will accordingly dismiss the present action with prejudice for the reasons that follow.

## I.    FACTUAL BACKGROUND

The Court adopts the Magistrate Judge's recitation of the background and procedural history of the present action in full. Accordingly, the Court will limit its synopsis of the case to those facts noted by the Magistrate Judge, and others of which the Court takes judicial notice, which lead it to the decision it announces in this Order.

### A.    Plaintiff's Arrest and Appointment of Counsel

Plaintiff was arrested on June 23, 2014, on theft and assault charges. Compl. 4. At various times since then, Plaintiff has been housed at the El Paso County Detention Facility and the El Paso

---

[1] *See infra* n.7.

County Jail Annex.  *Id.*  He is currently confined in the El Paso County Detention Facility.  Am. Compl. 3.

On June 24, 2014, a "Misdemeanor Motion for Appointment of Counsel" was filed in the context of both criminal charges.[2]  *See Texas v. Hernandez*, No. 20140C06882 (Tex. Cnty. Crim. Ct. June 24, 2014); *Texas v. Hernandez*, No. 20140D03537 (Tex. Dist. Ct. Aug. 6, 2014).  That same day, counsel was appointed for Plaintiff through a District Attorney's Information Management System ("DIMS") "Order Appointing Attorney."  *See Hernandez*, No. 20140C06882; *Hernandez*, No. 20140D03537; *see also* Pl.'s Resp. to Questionnaire 4, ECF No. 10-1 [hereinafter "Plaintiff's Response"].  Through these orders, appointed counsel was tasked with representing Plaintiff—an indigent defendant—"until charges are dismissed, the defendant is acquitted, appeals are exhausted, or the attorney is permitted to or ordered by the court to withdraw as counsel for the defendant after a finding of good cause is entered on the record."  El Paso Crim. Dist. & Cnty. Cts.,

_____

[2] "[A] court may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom."  *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 410 (5th Cir. 2010) (quoting *In re Missionary Baptist Found. of Am., Inc.*, 712 F.2d 206, 211 (5th Cir. 1983)) (internal quotation marks omitted).

Standards and Procedures Related to Appointment of Counsel for

Indigent Defendants § 5.2(D)(1).

On August 5, 2014, a grand jury charged Plaintiff in a two-

paragraph indictment for aggravated assault with a deadly weapon.

Pl.'s Resp. Ex. B; *see also* Indictment, *Hernandez*, No. 20140D03537.

### B.   Plaintiff's Requested Motions

Over the course of his pretrial detention, Plaintiff submitted

numerous requests, sent several letters, and filed multiple grievances

regarding his limited access to the law libraries at both El Paso

detention facilities.  *See* Compl. Ex. A; Am. Compl. Ex. D.  In making

these requests, Plaintiff asserted that he required access and use of the

law libraries for purposes of "prepar[ing] for [his] up-coming [sic] court

date" and "assist[ing] [his] defense counsel in [his] own defense."

Compl. Ex. A.  Specifically, Plaintiff stated that use of the law libraries

was necessary "to prepare and file the Motions [he] need[ed]."  Am.

Compl. Ex. D; *see also id.* ("I need access to the Annex Law Library . . .

for legal research and motion preparation.").

On July 7, 2014, and July 27, 2014, Plaintiff sent letters to his

duly appointed counsel regarding his intended motions.  In his July 7

4

letter, Plaintiff asked his counsel to file certain "pretrial motions . . . to avoid . . . prolonged-unnecessary [sic] stay in the [El Paso County Detention Facility]."  The following motions were specifically listed in that letter:

- Motion and Order for Prompt Disposition of Pending Charge

- Motion and Order for Polygraph Examination[3]

- Motion and Order for Release on Personal Recognizance

- Motion and Order for Reduction of Bail

Pl.'s Resp. Ex. A(1).  He further stated that "the above listed motion[s] are all in connection with the assault charge 'falsely' filed against me." *Id.*

In his July 27 letter, Plaintiff communicated to his attorney that he had "attended a session of the legal facility here at the [El Paso County Jail Annex] and did some research on the assault charge."  *Id.* Ex. A(2).  Plaintiff further suggested that, based on his research, he was

---

[3] Plaintiff attached a draft "Motion for Polygraph Examination" as an exhibit to his response to the Magistrate Judge's questionnaire.  *See* Pl.'s Resp. Ex. B.  This motion was filed with the state court on November 20, 2014.  *See* Motion for Polygraph Examination, *Hernandez*, No. 20140D03537.

statutorily ineligible for the aggravated assault charge that had been brought against him. *Id.*

### C.   Adjudication of Plaintiff's Criminal Charges

On October 6, 2014, Plaintiff pleaded guilty to the misdemeanor theft charge and received, pursuant to a plea agreement, a sentence of 180-days confinement, suspended for a six-month period of probation and community supervision. *See Hernandez*, No. 20140C06882. Plaintiff states that his attorney "was present at the time of the taking of Plaintiff's plea." Pl.'s Resp. 4.

Despite the suspension of that sentence, Plaintiff alleges that he continued to be detained on two erroneous grounds. First, he was purportedly detained based on "an <u>expired</u> Fugitive From Justice (FFJ) warrant" from Louisiana. Compl. 7 (emphasis in original); *see also* Pl.'s Resp. 5. Second, Plaintiff continued to be detained based on his "felony assault charge," despite having been "granted release on his own recognizance" on August 18, 2014.[4]  Compl. 8.

---

[4] The state court judge presiding over Plaintiff's aggravated assault charge set bond at $2,500 for release on personal recognizance. *See* Bond Order, *Hernandez*, No. 20140D03537.  However, on October 3, 2014, the judge issued an "Order to Detain," which required the

6

To contest what he viewed as his unlawful detention, Plaintiff completed a hand-written application for a writ of habeas corpus, and during a motions hearing, he personally delivered it to the judge presiding over the adjudication of Plaintiff's aggravated assault charge. Pl.'s Resp. 5.  Plaintiff also mailed a copy of the application "to the jail magistrate court."  *Id.*  The trial court judge allegedly never ruled on the application, and consequently Plaintiff submitted an "Original Application for Writ of Mandamus" in the Texas Court of Criminal Appeals.  *See In re Michael Fernandez*, No. WR-82,545-01 (Tex. Ct. Crim. App. Dec. 3, 2014).  On February 18, 2015, the Texas Court of Criminal Appeals denied Plaintiff leave to file his original application. *See id.*

A jury trial on Plaintiff's aggravated-assault charge was initially scheduled to commence on November 14, 2014.  *See* Order of Court Setting, Aug. 25, 2014, *Hernandez*, No. 20140D03537.  Three Orders of the Court Setting followed.  The first reset trial for January 30, 2015. Order of Court Setting, Nov. 17, 2014, *Hernandez*, No. 20140D03537. The second reset trial for March 2, 2015.  Order of Court Setting, Feb. 2,

detention of Plaintiff "until further notice from [the] court."  *See* Order to Detain, *Hernandez*, No. 20140D03537.

7

2015, *Hernandez*, No. 20140D03537.  The third reset trial for May 15,
2015.  Order of Court Setting, Mar. 23, 2015, *Hernandez*, No.
20140D03537.  A "Final Judge's Conference" is currently scheduled for
May 7, 2015.  *Id*.  To date, the appointed attorney remains Plaintiff's
counsel-of-record in that case.  *See Hernandez*, No. 20140D03537; *see
also* Pl.'s Resp. 4.

### D.  Procedural History of the Present Action

Plaintiff filed an "Application to Proceed in District Court Without
Prepaying Fees or Costs" (ECF No. 1) in the present case on October 21,
2014.  In his attached Complaint, Plaintiff charged that as a result of
Defendants' actions, he had been denied access to the courts in violation
of his constitutional rights.  Compl. 3–4.  On November 10, 2014, the
Magistrate Judge to which the case had been referred informed Plaintiff
that she "require[d] additional information from Plaintiff in order to
determine how this case should proceed," and thus ordered him to
complete an eight-page questionnaire.  Order for Pl. to Complete
Questionnaire, ECF No. 2.  The twentieth question asked Plaintiff to
identify the motions for which he needed access to the law libraries in

order to prepare and file. *Id.* In his response, Plaintiff listed the following seven motions:

- Motion for Polygraph Examination

- Motion for Reduction of Bail

- Motion for Release on Personal Recognizance

- Motion for Prompt Disposition of Pending Charges

- Motion for Discovery and Inspection

- Writ of Habeas Corpus

- Writ of Mandamus

Pl.'s Resp. 7. The Magistrate Judge granted Plaintiff's application to proceed *in forma pauperis* on February 10, 2015, and Plaintiff's Complaint and Amended Complaint[5] were docketed later that day. ECF Nos. 15, 16, 18.

---

[5] In his "Motion to Amend Original Civil Action Complaint" (ECF No. 18) [hereinafter "Motion to Amend"], Plaintiff requested that the "Relief" section of his original Complaint be amended to include a request for "declaratory and injunctive relief." In his cover letter, he wrote that he had included a copy of his original Complaint along with his Motion to Amend, which contained the revised "Relief" section. *Id.* In reviewing the original Complaint that Plaintiff filed and his Amended Complaint, the Court notes that other minor wording differences exist, though their respective thrusts are largely identical. Thus, to ensure that Plaintiff's claim receives full consideration, the Court scrutinized both documents before issuing this Order.

On February 25, 2015, the Magistrate Judge issued her Report and Recommendation, in which she recommended that Plaintiff's Complaint "be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for being frivolous and for failure to state a claim." Report & Recommendation 1. Plaintiff—currently detained at the El Paso County Detention Facility—states that he received the Report and Recommendation on March 4, 2015. ECF No. 24. Following receipt, he submitted to the Court his "Written Objections to the U.S. Magistrate Judge's Report and Recommendation" (ECF No. 24) [hereinafter "Objections"], which bear the date of March 16, 2015. Objections 17. Those Objections were formally filed and docketed on March 23, 2015.[6] ECF No. 24. While Plaintiff's Objections do not focus on any specific

---

[6] Pursuant to Federal Rules of Civil Procedure 6(d) and 72(b)(2), Plaintiff had a total of seventeen days in which to file objections to the Magistrate Judge's Report and Recommendations. As the Report and Recommendation was filed on February 25, 2015, Plaintiff's Objections were not submitted within the allotted time period. However, in light of Plaintiff's status as a pretrial detainee and acknowledging his prior difficulties in securing sufficient time in the two law libraries to compose responses to the Magistrate Judge's orders, *see* ECF No. 9, the Court elects to waive the seventeen-day response deadline and will deem Plaintiff's Objections to be timely. *See* Fed. R. Civ. P. 1 (noting that the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding").

factual findings made by the Magistrate Judge in her Report and Recommendation, he vigorously contests her recommendation of dismissal of the present action with prejudice.  Objections 17.

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(a)(2), a court may, under certain circumstances, authorize the commencement of a suit by a prisoner seeking to bring a civil action without requiring prepayment of fees or security.  That statute stipulates, however, that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal is frivolous or malicious" or "fails to state a claim on which relief may be granted."  *Id.* § 1915(e)(2).

A complaint qualifies as frivolous for purposes of § 1915(e)(2)(i) "if it lacks an arguable basis in law or fact."  *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (quoting *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)) (internal quotation mark omitted).  The former refers to a situation in which a complaint "is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Id.* (quoting *Berry*, 192 F.3d at 507) (internal quotation mark omitted).  The latter applies when, "after

11

providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Id.* (quoting *Berry*, 192 F.3d at 507) (internal quotation mark omitted)

In determining whether an applicant fails to state a claim on which relief may be granted, a court determines whether, "taking the plaintiff's allegations as true, it appears that no relief could be granted based on the plaintiff's alleged facts." *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009) (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999)) (internal quotation marks omitted).  This is an identical standard as that which is applied in the context of Federal Rule of Civil Procedure 12(b)(6).  *See Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curiam).

Finally, pursuant to 28 U.S.C. § 636(b)(1)—the statute governing a district court's review of a Magistrate Judge's Report and Recommendation—a court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."[7]

---

[7] In his Objections, Plaintiff does not identify specific factual findings made by the Magistrate Judge to which he objects.  Rather, he offers a wide-ranging critique of the Magistrate Judge's reasoning and opposes

## III.   ANALYSIS

As noted above, Plaintiff charges that he "has been denied adequate meaningful access to the courts by the defendants" as a result of his limited access to the law libraries in the El Paso County Detention Facility and the El Paso County Jail Annex.  Am. Compl. 11. The Court will first provide some background on the contours of that constitutional right before proceeding to explain why Plaintiff "fails to state a claim on which relief may be granted."  § 1915(e)(2)(B)(ii).

### A.   Right to Meaningful Access to the Courts

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court confronted the question of "whether States must protect the right of prisoners to access to the courts by providing them with law libraries or alternative sources of legal knowledge." *Id.* at 817.  The Court found it "established beyond doubt that prisoners have a constitutional right of

---

her ultimate recommendation of dismissal with prejudice.  Objections 17.  The Court is mindful of the fact that filings by pro se plaintiffs—as is the case here—are "held to less stringent standards than formal pleadings drafted by lawyers," and thus must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). Consequently, the Court will review de novo the entirety of the Magistrate Judge's Report and Recommendation out of an abundance of caution.

access to the courts," and thus held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 821, 828.

The right enunciated in *Bounds* was, therefore, robust but not unqualified.  As the Court later clarified, "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Rather, "[t]he right that *Bounds* acknowledged was the (already well-established) right of *access to the courts.*" *Id.* at 350 (emphasis in original).  In other words, under *Bounds*, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* at 351 (quoting *Bounds*, 430 U.S. at 825).  Providing prisoners with access to law library facilities is but "one constitutionally acceptable method to assure meaningful access to the courts," and "alternative means to achiev[ing] that goal" exist. *Id.* (quoting *Bounds*, 430 U.S. at 830).

The Supreme Court in *Christopher v. Harbury*, 536 U.S. 403 (2002), went on to distinguish two types of cognizable claims of denial of access to the courts. The first is forward-looking, and the second is backwards-looking. Forward-looking claims challenge "systemic official action [that] frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* at 413. The focus in such a case, therefore, is the denial of "an opportunity to litigate" that has been lost "in the short term." *Id.* The objective of a forward-looking suit is thus "to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.*

In contrast, backwards-looking claims "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* at 414 (footnote omitted). The "ultimate object" in a backwards-looking claim is thus not relief in a "suit[] yet to be litigated," but rather "judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.* at 413, 414.

What both types of claims have in common, therefore, is the pursuit of "some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414–15.  Forward-looking claims seek "to remove roadblocks to future litigation," and consequently a plaintiff "must identify a 'nonfrivolous,' 'arguable' underlying claim," that may be brought once access to the courts is restored.  *Id.* at 415 (quoting *Lewis*, 518 U.S. at 353, 353 n.3).  Similarly, in a backwards-looking claim, "the underlying cause of action and its lost remedy must be addressed by allegations in the complaint." *Id.* at 416.

This line of Supreme Court case law thus emphasizes three points pertinent to Plaintiff's case.  First, in assessing a claim of denial of access to the courts, "meaningful access to the courts is the touchstone," and not whether any one specific means of access has been provided. *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 823) (internal quotation marks omitted).  Second, when proffering such a claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415.

16

Third, the nature of the remedy sought will differ depending on whether the claim is forward-looking or backwards-looking.

### B.    Plaintiff's Allegations

Plaintiff's suit must be dismissed because it contravenes the above-listed three principles.

#### i.    Plaintiff Was Represented by Counsel

##### a.    The Motions that Plaintiff Sought to File Pertained to Charges for which He Had Counsel

First, although Plaintiff seeks use of the law libraries at the El Paso County Detention Facility and the El Paso County Jail Annex for purposes of preparing and filing the seven motions listed at Part I.D *supra*, each motion pertains to criminal proceedings for which he had the assistance of counsel.  This sufficed to provide Plaintiff with "meaningful access to the courts." *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 823) (internal quotation mark omitted).

In *Degrate v. Godwin*, 84 F.3d 768 (5th Cir. 1996) (per curiam), the Court of Appeals for the Fifth Circuit held that a prisoner who has "rejected the assistance of court-appointed counsel . . . ha[s] no constitutional right to access a law library in preparing the pro se

defense of his criminal trial." *Id.* at 769.  In subsequent

nonprecedential memoranda dispositions, the Fifth Circuit has cited

*Degrate* for the broader proposition that prisoners who receive court-

appointed counsel possess no constitutional claim of denial of access to

the courts based on an inability to utilize law libraries.  *See, e.g.,*

*Dickinson v. Fort Bend Cnty., Tex.*, 325 F. App'x 389, 390 (5th Cir. 2009)

("Because Dickinson had court-appointed counsel to represent him, he

did not have a constitutional right of access to a law library to prepare

his criminal defense."); *Barnes v. Cerliano*, 258 F. App'x 631 (5th Cir.

2007) ("A prisoner's constitutional right of access to courts may be

satisfied through representation by counsel."); *Caraballo v. Fed. Bureau*

*of Prisons*, 124 F. App'x 284, 285 (5th Cir. 2005) ("Because Caraballo

had court-appointed counsel on appeal, he had no constitutional right of

access to a law library in preparing his defense . . . ."); *Jackson v. Caddo*

*Corr. Ctr.*, 67 F. App'x 253 (5th Cir. 2003) ("Because the state courts

offered him appointed counsel, his right of access to the courts was

satisfied.").  Thus, although *Degrate* does not squarely apply in the

present case—as Plaintiff never rejected the assistance of his court-

appointed counsel—and although the Court is not bound by the

memoranda dispositions cited above, the trend in the Fifth Circuit's various applications of *Degrate* is clear and the Court will accordingly follow suit.

Further, the seven motions for which Plaintiff requires use of the two law libraries clearly pertain to the two criminal adjudications for which Plaintiff was granted court-appointed counsel.  Plaintiff listed the first four motions (Motions for Polygraph Examination, Reduction of Bail, Release on Personal Recognizance, and Prompt Disposition of Pending Charges) in his July 7 letter to his appointed counsel and stated that they were "all in connection with the assault charge 'falsely' filed against [him]."  Pl.'s Resp. Ex. A(1).  There is no indication that the Motion for Discovery and Inspection that Plaintiff desires to file could relate to anything other than his misdemeanor theft or felony aggravated assault charges.  Finally, Plaintiff's applications for a writ of habeas corpus and a writ of mandamus pertained to his alleged unlawful detention for his then-pending aggravated assault charge.

In sum, Plaintiff can assert no constitutional claim for denial of access to the courts based on his limited access to the two law libraries

because he was appointed counsel for both of his criminal charges, and because all seven of his intended motions concern those charges.

### b. Ineffective Assistance of Counsel Does Not Equate to Inadequate Assistance

In response to the Magistrate Judge's reliance on the fact that Plaintiff received state-appointed counsel in both of his criminal cases, Plaintiff charges that his attorney "rendered ineffective assistance." Objections 4. Specifically, Plaintiff alleges that his counsel (1) failed to appear for jury trial on November 14, 2014, and January 30, 2015, (2) failed to appear at his Article 28.01 Motions Hearing,[8] and (3) has not responded to the "4 to 5 letters" Plaintiff has sent to him. *Id.* at 4–5. In light of this alleged ineffective assistance, Plaintiff argues that he requires access to the two law libraries in order to provide for his own criminal defense. *Id.* at 5.

Plaintiff's allegations cannot be dismissed out of hand. Although a state may satisfy its obligation of providing a prisoner with access to

---

[8] Pursuant to Article 28.01 of the Texas Code of Criminal Procedure, a court may set a pretrial hearing to address matters relating to arraignment, pleadings of the defendant, special pleas, exceptions to the indictment or information, motions for continuance, motions to suppress, motions for change of venue, discovery, entrapment, and motions for the appointment of an interpreter.

the courts by appointing an attorney to represent him, the provision of ineffective assistance by that attorney could theoretically render such efforts deficient, thus requiring that some other mechanism for accessing the courts be provided.

Out-of-circuit case law undermines this proposition, however.  In *Bourdon v. Loughren*, 386 F.3d 88 (2d Cir. 2004), the Court of Appeals for the Second Circuit persuasively explained why "the effectiveness inquiry under the Sixth Amendment's guarantee of the assistance of counsel [does not] inform[] the inquiry relevant to an alleged violation of access to the courts."  *Id.* at 95.  The Second Circuit noted that the two rights "do not share a common constitutional source," and thus "although both [are] concerned generally with assuring that criminal defendants receive a fair trial, [they] protect that fundamental right in different ways and apply to different categories of persons."  *Id.* at 95, 96.  The former focuses on "the right of a defendant to be heard on the criminal charges against him," while the latter seeks to ensure that "prisoners defending against criminal charges or convictions (either directly or collaterally) or challenging the conditions of their confinement . . . [are] not be impeded from presenting those defenses

and claims for formal adjudication by a court." *Id.* at 96. Thus, "[t]he Sixth Amendment right to counsel guarantees 'effective assistance.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). A prisoner's right to access to the courts, in contrast, "guarantees that access provided by persons trained in the law be 'adequate assistance.'" *Id.* (quoting *Bounds*, 430 U.S. at 828).

These two standards "are not synonymous." *Id.* Effective assistance of counsel assures "assistance by a competent attorney who, through his or her representation of the defendant, 'plays the role necessary to ensure that the trial is fair.'" *Id.* at 96–97 (quoting *Strickland*, 466 U.S. at 685). Adequate assistance, on the other hand, safeguards a prisoner's "*capability* of bringing contemplated challenges to sentences or conditions of confinement before courts." *Id.* at 97–98 (emphasis in original) (quoting *Lewis*, 518 U.S. at 356) (internal quotation mark omitted). The Second Circuit thus concluded that a court-appointed lawyer fails to proffer adequate assistance when he fails to "furnish [his client] with the capability of bringing his challenges before the courts." *Id.* at 98; *see also Schrier v. Halford*, 60 F.3d 1309, 1314 (8th Cir. 1995) (concluding that in the context of "the

right of meaningful access to the courts, the term 'adequate,' as used in *Bounds* . . . refers not to the effectiveness of the representation, but to the adequacy of the prisoner's access to his or her court-appointed counsel or other law-trained assistant").[9]

With this understanding, the Court cannot conclude that Plaintiff's allegations suffice to demonstrate that his counsel failed to furnish him with the capability of bringing his legal challenges before the state court. Plaintiff's state-appointed attorney has filed multiple motions on his behalf with the state court, including a "Motion for Court Setting," a "Waiver of Arraignment," and a "Motion for the Appointment of an Investigator." *See Hernandez*, No. 20140D03537. Moreover, Plaintiff has proven himself able to file motions with the court on his own behalf. *See* Motion for Polygraph Examination, *Hernandez*, No. 20140D03537. And to the extent that Plaintiff would like to see additional motions filed with the state court, his counsel is not

---

[9] The Court does not find the Eighth Circuit's decision in *Schrier* as convincing as the Second Circuit's decision in *Bourdon*. Insofar as state-appointed counsel merely constitutes one permissible means of satisfying a prisoner's constitutional right of access *to the courts*, it follows that satisfaction of that right necessarily depends on the prisoner's level of access to the courts *through* his or her state-appointed counsel and not the prisoner's access to his or her counsel itself.

23

precluded from doing so prior to the Final Judge's Conference currently set for May 7, 2015.[10]  Consequently, although Plaintiff expresses significant dissatisfaction with his state-appointed counsel, the Court cannot conclude that the performance of his attorney has constructively divested him of access to the courts.[11]

### ii.   Plaintiff Largely Fails to State Any Underlying Causes of Action

Second, denial of access to the courts is not a freestanding claim, but rather must be accompanied by an "underlying cause of action . . . described in the complaint." *Christopher*, 536 U.S. at 415.  For the most part, Plaintiff offers none.  Nowhere in Plaintiff's Complaint, Amended Complaint, or assorted filings does he offer any indication as to what the underlying legal bases would be in his motions for reduction of bail, release on personal recognizance, prompt disposition of pending charges, or discovery and inspection.  Additionally, he fails to explain the grounds for his application for mandamus relief.

---

[10] The Court notes that at least one of Plaintiff's intended motions— Motion for Release on Personal Recognizance—was partially granted. *See* Bond Order, *Hernandez*, No. 20140D03537.

[11] As for Plaintiff's allegations that his attorney "fail[ed] to appear before the state court for jury trial," Objections 4, the Court notes that jury trial did not actually take place on the dates that Plaintiff cites. Rather, Plaintiff's jury trial was reset on both occasions.

In contrast, Plaintiff's draft "Motion for Polygraph Examination" *does* articulate a potential basis for the action sought—namely, that "permission to take a polygraph examination" of the alleged victim in Plaintiff's aggravated-assault case (his sister) might be found in Article 15.051 of the Texas Criminal Procedure Code.  *See* Pl.'s Resp. Ex. B. That Article, however, sets forth the circumstances under which "[a] peace officer or an attorney representing the state" may request a polygraph examination of "a person who charges or seeks to charge in a complaint the commission" of certain sexual offenses[12]—none of which Plaintiff has been charged with violating.  *See* Tex. Crim. Proc. Code Ann. § art. 15.051.  Plaintiff moreover concedes in his draft motion that "the results of a polygraph examination [would be] 'inadmissible' at trial."  Pl.'s Resp. Ex. B.  Consequently, Plaintiff cannot demonstrate that this motion presents "a 'nonfrivolous,' 'arguable' underlying claim," as required by Supreme Court precedent.  *Christopher*, 536 U.S. at 415 (quoting *Lewis*, 518 U.S. at 353, 353 n.3.).

---

[12] For example, "Article 15.051(b) carefully delineates the circumstances in which a prosecutor may request the complainant in a sexual assault case to take a polygraph examination."  Tex. Att'y Gen. Op. LO-96-034 (1996).

Similarly, though Plaintiff offers a number of facially valid causes of action to support his application for a writ of habeas corpus, the Court cannot find that they constitute nonfrivolous, arguable bases. Plaintiff contends that he has been detained unlawfully (1) despite having been "granted release on his own recognizance . . . on the felony assault charge," (2) without bail, and (3) in violation of his "constitutional right to a speedy trial." Objections 2, 11. However, the Bond Order that granted Plaintiff release on personal recognizance, subject to certain conditions, on a $2,500 bond was superseded by the state court's Order to Detain, filed on October 3, 2014, which required his detention "until further notice from [the] court." Order to Detain, *Hernandez*, No. 20140D03537. Moreover, a pretrial detainee's Sixth Amendment right to a speedy trial is assessed pursuant to a four-factor test that balances "(1) 'length of delay,' (2) 'the reason for the delay,' (3) 'the defendant's assertion of his right,' and (4) 'prejudice to the defendant.'" *United States v. Molina-Solorio*, 577 F.3d 300, 304 (5th Cir. 2009) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Other than referencing a "'120-day period' for speedy trial,"[13] Plaintiff does not

---

[13] As Plaintiff is being held in state custody, the requirements of the

26

explain why his current state court trial schedule violates his speedy trial right.[14]

### iii.   Plaintiff Identifies No Forward-Looking Causes of Action to Merit Declaratory or Injunctive Relief

Finally, while Plaintiff presents backwards-looking causes of action in the present suit, he requests relief befitting forward-looking causes of action.  As discussed above, Plaintiff indicates that he intended to file—or to have his court-appointed attorney file—motions for a polygraph examination, reduction of bail, release on personal recognizance, prompt disposition of pending charges, and discovery and inspection.  Pl.'s Resp. 7.  These requests all pertain to criminal prosecutions that have already concluded.  As for Plaintiff's stated desire to use the two law libraries to prepare and file applications for writs of habeas corpus[15] and mandamus, those documents have already

---

federal Speedy Trial Act do not apply.

[14] Plaintiff further alleges that he has been detained unlawfully on an expired Fugitive From Justice warrant issuing out of Louisiana. Compl. 2.  Even if the Court were to credit this allegation, however, it would still be insufficient to avert dismissal of the present action, as Parts II.B.i and II.B.iii offer alternative grounds for finding this aspect of Plaintiff's claim deficient.

[15] The bulk of Plaintiff's Objections attack his "continued oppressive incarceration" by Texas authorities.  Objections 10.  However, such a

27

been prepared and filed.  Plaintiff's application for a writ of habeas corpus was hand-delivered to the judge presiding over his aggravated-assault trial, and his application for a writ of mandamus was filed with the Texas Court of Criminal Appeals.  *See* Pl.'s Resp. 5; Objections 3; *In re Michael Fernandez*, No. WR-82,545-01.

Plaintiff's seven underlying causes of action thus do not implicate any "systemic official action frustrat[ing] [him] in preparing and filing suits at the present time."  *Christopher*, 536 U.S. at 413.  Rather, Plaintiff's case can only fairly be characterized as looking "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable."[16]  *Id.* at 414 (footnote omitted).  To offer just one

challenge is properly raised through a petition for a writ of habeas corpus, which Plaintiff has already filed with the Texas state court adjudicating his aggravated assault charge.  Pl.'s Resp. 5; Objections 3 n.3.  To the extent that Plaintiff simply seeks a ruling by that judge on his petition, *see* Objections 14 (alleging that his petition has been "ignored"), he explains neither how his limited access to the two law libraries frustrates his achievement of that goal, nor how increased access to the law libraries would enable him to pursue that goal in the future.

[16] Indeed, Plaintiff asserts in his Objections that his limited access to the law libraries have "denied him the due process right to present his constitutional claims, properly and fairly before the Texas courts." Objections 7.

example, Plaintiff asserts in his Objections that his "Motion for Polygraph Examination and Writ of Habeas Corpus were 'inadequately' prepared due to <u>inadequate</u>, <u>meaningful</u> access to <u>both</u> detention facility law libraries."[17] Objections 3 (emphasis in original). With such backwards-looking causes of action alleged in the present case, Plaintiff's "complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Christopher*, 536 U.S. at 415.

Plaintiff fails to do so. In his Amended Complaint, he asks the Court to grant him "declaratory and injunctive relief for deprivation of his due process 14th amendment constitutional rights to adequate and meaningful 'access [sic] the courts' through use of BOTH detention facilities' law library [sic]." Am. Compl. 3. However, these remedies do not qualify as "not otherwise available in some suit that may yet be brought." *Christopher*, 536 U.S. at 415. Rather, such relief would be available in a future declaratory-judgment action. Put differently,

---

[17] Plaintiff also asserts that he has suffered prejudice as a result of the "substantial delay . . . in obtaining a judicial determination *in all his pleadings*." Objections 7 (emphasis added). This serves to highlight the fact that Plaintiff seeks relief based on motions and documents that he has *already filed*.

Plaintiff relies on underlying claims that are backwards-looking, and thus the relief he seeks must constitute recompense for those past or lost claims.  Because the declaratory and injunctive relief he seeks does not qualify as such—rather, the relief he desires may be pursued through future litigation—there exists a mismatch between his underlying claims and the relief he requests.[18]

The same conclusion results even if the Court were to consider the relief requested in Plaintiff's original Complaint.  There, Plaintiff asked the Court to "appoint [an] ombudsman or special master to perform [a] thorough inspection of both the county jail detention facility and annex and recommend federal court intervention to bring both jail facilities up to constitutional standard [sic]."[19]  Compl. 4.  These actions do not

---

[18] Responding to the Magistrate Judge's Report and Recommendations, Plaintiff argues that his restricted access to the two law libraries "limit[s] his ability to file future civil actions."  Objections 12.  While this assertion hints at the existence of forward-looking causes of action, Plaintiff does not elaborate on what those causes of action would be. Plaintiff's claim therefore remains deficient, as "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint."  *Christopher*, 536 U.S. at 415.

[19] In his Objections, Plaintiff revisits these requests and asks for the Court's "intervention into the operations of both law libraries at both facilities" by appointing "a special master (or ombudsman) to conduct inspections . . . 'permanent' assignment of a detention officer . . . assignment of an inmate counsel . . . to provide limited legal

constitute, however, "a remedy that may be awarded as recompense" for Plaintiff's backwards-looking causes of action. *Christopher*, 536 U.S. at 415. Rather, the appointment of an ombudsman or special master would merely render it easier for Plaintiff to file motions and seek the assistance of the courts moving forward.

Consequently, for these reasons, the Court would alternatively be inclined to find that Plaintiff lacks standing to pursue the remedies he desires. Because there is no "likelihood that the requested relief will redress the alleged injury," Plaintiff cannot demonstrate redressability, which forms one part of "the [three-part] core of Article III's case-or-controversy requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998).

## IV.  CONCLUSION

The Supreme Court has "consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts." *Bounds*, 430 U.S. at 824. However, "adequate law libraries are [only] one constitutionally acceptable method to assure meaningful

assistance," and ordering jail authorities "to allow approximately three hours and thirty minutes weekly" for pretrial detainees to utilize law library resources.  Objections 14–15 (emphasis in original).

access to the courts," and states may thus employ "alternative means to achieve that goal." *Id.* at 830.  Moreover, even when a prisoner has suffered a denial of access to the courts, the relief available to that prisoner depends on the nature of his or her underlying cause of action previously or currently being frustrated.  With these principles in mind, and after affording due consideration to Plaintiff's claim, the Court concludes that the present action should be dismissed with prejudice for failure to state a claim.

Accordingly, **IT IS ORDERED** that the above-captioned cause is **DISMISSED WITH PREJUDICE** for failure to state a claim.

**IT IS FURTHER ORDERED** that all settings in this matter are **VACATED**.

**IT IS FURTHER ORDERED** that all pending motions in this cause, if any, are **DENIED AS MOOT**.

**FINALLY, IT IS ORDERED** that the Clerk shall **CLOSE** this case.

SIGNED this ___31___ day of ___March___, 2015.


_____
**PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE**